[No. 11659.   Department Two.   April 8, 1914.]

CONTINENTAL DISTRIBUTING COMPANY, *Respondent*, v.
EMIL SWANSON, *Appellant*, H. FALK *et al.*,
*Defendants*.[1]

FRAUDULENT CONVEYANCES—SALES IN BULK—STATUTES—EXCUSE
FOR NONCOMPLIANCE—PAYMENT. Under the sales-in-bulk act, Rem.
& Bal. Code, § 5295, providing that the failure to take the affidavit
as to creditors and indebtedness of the vendor may be cured by ap-
plying the purchase money in payment of the claims of creditors,
share and share alike, a creditor who has received his *pro rata* share
of the purchase money cannot complain of the failure to comply with
the act in the first instance.

GARNISHMENT—LIABILITY OF GARNISHEE — PROMISE TO PLAINTIFF.
In garnishment proceedings to enforce the statutory liability of the
purchaser of a stock of goods in bulk to the creditors, for failure
to comply with the sales-in-bulk act, the purchaser cannot be held
on the theory that he had, since the sale, assumed or guaranteed
payment of the indebtedness of the old firm.

Appeal from a judgment of the superior court for Frank-
lin county, Holcomb, J., entered December 19, 1912, upon
findings in favor of the plaintiff, in garnishment proceed-
ings.   Reversed.

*Tolman & King*, for appellant.

*H. B. Noland* (*G. C. Israel*, of counsel), for respondent.

MORRIS, J.—Respondent, having recovered a judgment
against defendants, Falk & Gannon, for the sum of $2,003.35,
sued out a writ of garnishment directed to appellant.   To
this writ, appellant filed an answer, denying any indebted-
ness to Falk & Gannon, or that he had in his possession or
under his control any property belonging to them.   In re-
ply, respondent alleged that, prior to October 19, 1911, Falk
& Gannon were engaged in the liquor business, in Franklin
county, in which business the indebtedness represented by its

[1]Reported in 139 Pac. 865.

judgment had accumulated; that appellant purchased a half interest in this business from Falk & Gannon, paying therefor a sum in excess of $3,200, without requiring the affidavit as to creditors and indebtedness demanded by the sales-in-bulk statute, and without seeing that the purchase price of the interest acquired by him was applied in payment of the then existing indebtedness of Falk & Gannon. Upon these issues, judgment went against the garnishee, and he has appealed.

Several questions are discussed in the briefs, but one of these seems to us so clearly decisive of the appeal that we will confine our discussion to it alone. Assuming that Swanson paid $3,200 for his interest in the business, as the contract recites, all agree that no part of this sum was ever paid to either Falk or Gannon. It must then have remained in the hands of Swanson for some purpose not disclosed by the record. It is admitted that, on November 3, 1911, Swanson paid respondent $800 to apply on the old indebtedness of Falk & Gannon. The entire claim of respondent at the time of the sale was $2,500, and the entire indebtedness of Falk & Gannon was between $11,000 and $12,000. The statute, Rem. & Bal. Code, § 5295 (P. C. 69 § 9), provides that the failure to require the affidavit of creditors and indebtedness may be cured by applying the purchase money of the property in payment of the claims of creditors, share and share alike. The claim of respondent was less than one-fourth of the entire indebtedness of Falk & Gannon at the time of the sale. It received from appellant, after he took charge of the business, the sum of $800, or just one-fourth of the $3,200 mentioned as the consideration of the purchase. Had the $3,200 been applied in payment of the claims of creditors at the time of the sale, share and share alike, respondent could not have received a sum larger than $800. It has received its *pro rata* share of the purchase price, and the failure to require the affidavit has been ex-

cused.   Respondent is, therefore, not in a position to complain of the failure to comply with the sales-in-bulk law in the first instance, since it has received more than its share of the purchase price had the law been complied with and the purchase price applied in payment of the claims of creditors, share and share alike.   In the letter of November 3, inclosing the $800 check to respondent, Swanson uses this language:  "The new firm announces that, in a short time, it will be in a position to pay all old accounts and outstanding indebtedness.   Consequently, you may expect to hear from them again within a reasonable length of time."   The lower court seems to have placed much stress upon this language, saying in its memorandum decision:

"The conclusion is almost irresistible that the garnishee defendant when he wrote the aforesaid letter recognized and assumed that he was obliged to pay all the outstanding indebtedness which included plaintiff's claim, and judgment will therefore be for the plaintiff against the garnishee defendant for the amount of plaintiff's judgment."

The lower court in so holding evidently overlooked the fact that this is a garnishment proceeding, and appellant is proceeded against upon the theory of a statutory liability, and not upon any theory of an assumption or guaranty of payment of the indebtedness of the old firm.   No such liability could be enforced against him in this proceeding.

We are constrained to hold that the lower court was in error, and its judgment is reversed and the cause remanded with instructions to discharge the garnishee.

CROW, C. J., FULLERTON, MOUNT, and PARKER, JJ., concur.